**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

OPAL BUTLER, INDIVIDUALLY, AND
AS SPECIAL ADMINISTRATOR OF THE
ESTATE OF JAMES BUTLER, ET AL,                                                PLAINTIFFS

V.                                          4:07CV00519 JMM

UNITED STATES OF AMERICA                                                      DEFENDANT

## ORDER

A bench trial was held before the Court on March 30-31, 2009. At the conclusion of the trial, the Court took the case under advisement. As requested, the parties have filed post-trial briefs. After review of the entire record, the Court makes the following findings of fact and conclusions of law.

### I. Findings of Fact

1. Plaintiff Opal Butler, wife of the decedent James W. Butler, is the duly appointed special administrator of the Estate of James W. Butler. Plaintiffs Opal Butler, Michael Butler, and Gregory Butler are the living heirs and wrongful death beneficiaries of James W. Butler.

2. The United States of America is sued for the acts of its agency, the Department of Veterans Affairs (the "VA"), its agents and employees, which were at all material times acting within the scope of their office or employment.

3. Plaintiffs bring their claims under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*. As for Plaintiffs' negligence claims, except those claims concerning failure to obtain an informed consent, Plaintiffs have complied with all prerequisites under the Act. The Court has jurisdiction and venue is proper.

4. The decedent, James W. Butler ("Butler"), was a totally disabled veteran who was eligible for care from the VA. Mr. Butler's disability resulted from the loss of use of both feet, valvular heart disease and radicular nerve paralysis. The decedent's medical history included an operation for bladder cancer with ileostomy in 1985, multiple cerebral vascular accidents commencing in 1993, multiple falls at home, aortofemoral bypass graft/bilateral renal artery stenosis and endarterectomy in 1995, mitral valve replacement/lifetime anti-coagulation in 1996, chronic obstructive pulmonary disease, atrial fibrillation, deep vein thrombosis, degenerative joint disease, dementia, and peripheral vascular disease.

5. Mr. Butler entered home-based primary care administered by the Central Arkansas Veterans Healthcare System in July 1997. At that time, Mr. Butler was being administered approximately twelve medications and receiving regular home visits by dieticians, nurses, nurse practitioners, therapists and social workers. Mr. Butler's medical records establish that in July 2000 he became a total care patient unable to walk or care for himself and was diagnosed with end stage heart disease with overall deteriorating condition.

6. Mr. Butler signed a VA Living Will on February 4, 1999 which directed that life-sustaining treatment be withheld or withdrawn should he suffer from a terminal illness. Mr. Butler told VA social worker, Rita Nunn Jones, during a home visit that he did not want to be fed by a feeding tube.

7. On September 18, 2000, Mr. Butler suffered a stroke (left frontotemporal). On September 19, 2000, Mr. Butler fell from his bed following a cerebral vascular accident.

    On December 30, 2000, the decedent suffered another stroke (left caudate). An MRI taken on January 3, 2001 showed three different left hemisphere strokes (embolic). As a result, Mr. Butler was rendered totally incompetent no later than January 2001.

8. Mr. Butler's appetite decreased after this series of strokes and he began to lose weight. Mr. Butler lost eight percent (8%) of his body weight between January 25, 2001 and February 18, 2001.

9. As a result of Mr. Butler's physical and mental impairments, Plaintiff Opal Butler had difficulty caring for Mr. Butler at home. From January 25, 2001 until February 8, 2001, the decedent entered the VA nursing home at Fort Roots, North Little Rock, Arkansas ("Fort Roots") to provide Plaintiff respite from caring for Mr. Butler. A Do Not Resuscitate was discussed with Plaintiff Opal Butler who requested that the Order be entered.

10. On February 9, 2001, Mr. Butler returned to his home where Plaintiff Opal Butler was again his primary care giver. On or about February 12, 2001, the decedent fell breaking his left hip (upper femur). On February 18, 2001, Mr. Butler was taken to the emergency room at the McClellan Hospital of the Central Arkansas VA Healthcare System ("McClellan Hospital") where his broken hip was discovered. Surgery was neither recommended nor undertaken because of the decedent's fragile health.

11. On February 27, 2001, Mr. Butler was released from McClellan Hospital and returned to the nursing home unit at Fort Roots.

12. A Plan of Care was created for Mr. Butler on March 6, 2001 by the Fort Roots staff. It was noted in the Plan that Mr. Butler was not eating. The decedent was not taking

sufficient nutrition to sustain life or prevent skin breakdown. Plaintiff Opal Butler was advised of this fact. She stated that the decedent had made clear, while competent, that he did not want a "feeding tube." Therefore, no PEG tube was inserted. Fort Roots personnel repeatedly attempted to find a way to induce the decedent to take sufficient nutrition to maintain life.

13. On or about March 27, 2001, Mr. Butler fell while at Fort Roots breaking his right hip. He was transported back to McClellan Hospital where he underwent hip surgery. While at McClellan, Mr. Butler was prescribed and given narcotic analgesics for his pain. The medical records indicate that the narcotic analgesics were discontinued prior to Mr. Butler's release from McClellan Hospital.

14. During the time period that the decedent was being cared for at McClellan Hospital, he began developing pressure sores as a result of his decreased mobility and lack of adequate nutrition.

15. Mr. Butler was returned to Fort Roots on April 17, 2001 after being released from McClellan Hospital.

16. Mr. Butler's Plan of Care was updated by the Fort Roots staff on June 5, 2001. It was noted that a feeding tube was recommended but denied by Butler's family. Mr. Butler was prescribed Tylenol suppositories for pain.

17. Mr. Butler died on June 12, 2001. The death certificate states that his immediate cause of death was sepsis due to non-healing skin ulcers and malnutrition. He was sixty-eight (68) years old.

## II. Conclusions of Law

18. Plaintiffs make claims against the VA, specifically the health care providers at Fort Roots, for acts and omissions constituting medical negligence pursuant to Ark. Code Ann § 16-114-201, the Arkansas medical malpractice statute. Plaintiffs allege that as a proximate result of the actions of Fort Roots personnel Mr. Butler suffered injuries that would not otherwise have occurred. Plaintiffs seek damages under the Arkansas Survival Statute and the Arkansas Wrongful Death Statute.

19. The Court previously dismissed all of Plaintiff's claims except these medical malpractice claims. As the Court stated in its Order dated September 14, 2007, "[a] litigant may not base any part of his tort action against the United States on claims that were not first presented to the proper administrative agency." *McCoy v. United States*, 264 F.3d 792 (8th Cir. 2001).

20. Plaintiffs' claims are limited to the alleged medical malpractice of the Defendant in treatment of Mr. Butler's pressure sores which became infected and caused his death. There was testimony that the pressure sores were cause by malnutrition and decreased mobility. Therefore the Court has considered the actions of the Fort Roots personnel with regard to these issues.

21. Under Arkansas law, "the plaintiff must prove the applicable standard of care, that the medical provider failed to act in accordance with that standard, and that such failure was a proximate cause of the plaintiff's injuries." *Young v. Gastro-Intestinal Center, Inc.*, 205 S.W.3d 741, 745 (Ark. 2005).

22. Plaintiffs offered the expert testimony of Stephen D'Amico, M.D., an internal medicine physician specializing in Geriatrics in Nashville, Tennessee. Dr. D'Amico is the director of a nursing home facility in Nashville, Tennessee. He testified that the resources and the standard of care are similar in Nashville and Little Rock, Arkansas.

23. Defendant offered the expert testimony of Larry Johnson, M.D., the Medical Director of the Fort Roots nursing home unit, and Kenneth Sauer, M.D., a hospice specialist at the University of Arkansas for Medical Sciences.

24. The Court finds that Fort Roots personnel did not fall below the standard of care in providing nutrition to Mr. Butler. Opal Butler was informed on numerous occasions that Mr. Butler was not taking in enough nutrition to sustain his life. Mr. Butler clearly stated through his Living Will and Do Not Resuscitate Order that he did not want life-sustaining measures which included a feeding tube. Although Opal Butler testified that she did not remember telling a nurse that Mr. Butler did not want to be fed by a tube, the evidence from other witnesses is overwhelmingly to the contrary. The Court finds that Mrs. Butler clearly stated her intentions not to provide Mr. Butler with a feeding tube.

25. Plaintiffs argued that Defendant's failure to strictly follow Arkansas Code Annotated § 20-17-203 is a breach of the standard of care in Arkansas. Specifically, Plaintiffs argued that Dr. Johnson's failure to certify that Mr. Butler was in a terminal condition in consultation with another physician is a violation of the statute and, thus, a breach of the standard of care. There was no testimony from Plaintiff's expert, Dr. D'Amico, to support this contention. Regardless, there was testimony from Dr. Johnson and Dr. Sauer that it was not standard practice for physicians in Central Arkansas to certify a patient to

be in a terminal condition in accordance with § 20-17-203 when a Living Will is in place for the patient.  The Plaintiffs have also failed to prove that this failure to certify Mr. Butler was the proximate cause of any injury suffered by Mr. Butler.

26.  The Court finds that the actions of Fort Roots personnel fell below the standard of care with regard to the implementation of Mr. Butler's Plan of Care.  Mr. Butler returned to Fort Roots on April 6, 2001.  His Plan of Care was not reviewed or revised until June 4, 2001.  Because of this delay, a pain management assessment for Mr. Butler was not done in a timely manner.  The Court finds that this failure warrants recovery in the amount of $25,000 for the decedent's pain and suffering.

26.  The Court finds that the VA did not fall below the standard of care in trying to prevent falls by Mr. Butler.  The evidence supports the conclusion that the VA was the leader in nursing home falls prevention in Central Arkansas during the relevant time period.

27.  In order to recover damages for wrongful death action, Plaintiffs must have proven that Mr. Butler's death was proximately caused by the negligence of Fort Roots personnel.  The Court finds that the Plaintiffs have failed to prove that Mr. Butler's death was proximately caused by the negligence of Fort Roots personnel.  Mr. Butler's death resulted from a decline in his health after the strokes he suffered in late 2000– not from inadequate care by Fort Roots personnel.

### III. Conclusion

The Court finds for the Estate of James W. Butler in the amount of $25,000.00 and against the Defendant on the negligence claim arising from the Defendant's failure to implement and review Mr. Butler's Plan of Care.  The Court finds in favor of the Defendant on the

remaining claims, including the wrongful death claim.

IT IS SO ORDERED this 9th day of June, 2009.

_____
James M. Moody
United States District Judge